**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MUTUAL RISK MANAGEMENT, LTD.,            :

               Plaintiff,            :

               v.            :            UNITED STATES DISTRICT COURT FOR
                                  :            THE EASTERN DISTRICT OF
JOHN HANCOCK LIFE INSURANCE            :            PENNSYLVANIA
COMPANY f/k/a JOHN HANCOCK            :            CIVIL ACTION NO. 2004-00347-NS
MUTUAL LIFE INSURANCE COMPANY,            :

               Defendant.            :            05 MBD 10108
                                    :


**PLAINTIFF MUTUAL RISK MANAGEMENT LTD.'S**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN COMPLIANCE WITH**
**SUBPOENA**

**I.**    <u>**INTRODUCTION**</u>

        Plaintiff Mutual Risk Management ("MRM") has filed the instant motion because

it has been deprived of the most fundamental information necessary to prosecute its case against

Defendant John Hancock Life Insurance Company ("Hancock"). Manulife Financial

Corporation ("Manulife"), Hancock's parent company, should be required to produce the

subpoenaed documents as soon as possible so that MRM may properly prepare for the June trial

in this important case.

        On December 8, 2004, MRM served a subpoena from United States District Court

for the District of Massachusetts on Manulife, requesting the production of documents (Exhibit

A). On January 3, 2005, Manulife filed Objections and Responses to the subpoena (Exhibit B).

Yesterday, March 3, 2005, MRM filed a motion to compel compliance with the subpoena in the

District Court for the Eastern District of Pennsylvania, the district where the underlying action is

pending, after conferring in good faith with opposing counsel about the discovery dispute. (See Certificate of Good Faith).

Pursuant to Federal Rules of Civil Procedure 45 and 26, generally, a motion to compel should be made to the court from which the subpoena issued. See In re Digital Equipment Corp., 949 F.2d 228, 230 (8th Cir. 1991) (noting that court from which subpoenas issued had jurisdiction to rule on objections to document requests contained in deposition subpoenas). The court, however, may in its discretion transfer the discovery matter to the court in which the action is currently pending. See id. at 231 (stating court may transfer in its discretion); U.S. v. Star Scientific, Inc., 205 F. Supp.2d 482, 485, 487 (D. Md. 2002) (finding that transfer to court where action is pending is preferable where the underlying litigation is complex and where nonparty indicates a preference for a forum other than the issuing court); Central States, Southeast and Southwest Areas Pension Fund v. Quickie Transport Co., 174 F.R.D. 50, 51-52 (E.D. Pa. 1997) (remitting discovery dispute where underlying action is factually complex and hardship on non-party is slight).[1]

Here, all parties have agreed to have Manulife's objections and MRM's motion heard in the Eastern District of Pennsylvania.[2] Accordingly, MRM respectfully requests that this

---

[1]    In Central States, the court denied the plaintiff's motion for protective order while granting the plaintiff leave to renew its request before the court handling the underlying dispute because the underlying court was more familiar with the merits of the underlying action. See Central States, 174 F.R.D. at 51.

[2]    It is not necessary for a party to formally move to transfer the motion. See, e.g., Star Scientific, 205 F. Supp. at 487 ("It is immaterial that Star did not formally move for the transfer of this motion.").

Court exercise its discretion to remit MRM's motion to the Eastern District of Pennsylvania, the Court where the instant case is pending.

## II.    **BACKGROUND**

Plaintiff MRM's previously filed Motion to Compel Production of Documents in Compliance With Subpoena alleges the following:

MRM owns Legion Insurance Company, a company Hancock forced into rehabilitation and then liquidation. Legion operated largely as a fronting insurance company, which means that it passed nearly all of its underwriting risk to third party reinsurers. Over the years, Hancock gladly accepted tens of millions of dollars of premiums from Legion to provide reinsurance protection to Legion, and Hancock was one of Legion's principal reinsurers. In 1999 Hancock discovered that one of its agents had been a willing party to a so-called reinsurance spiral and that this agent had committed Hancock to hundreds of million of dollars of reinsurance arbitrage contracts. The Legion business was largely unrelated to this business but Hancock stopped paying virtually all of its reinsurance obligations on discovery of the spiral. These actions significantly delayed the flow of claims into the reinsurance spiral to give Hancock and the other spiral participants time to devise a solution to their problems in the spiral. A reinsurance arbitration filed by Legion established that Hancock engaged in wrongful conduct and Legion was awarded more than $30 million in contractual and consequential damages.

Hancock's actions did not affect only Legion. They had a debilitating impact on MRM as well. Once a thriving publicly traded company, MRM was reduced to ruins due in large part to Hancock's interference with MRM's contractual relationships with its lenders. Hancock's unjustified refusal to pay its reinsurance obligations to MRM's subsidiary, Legion, caused MRM to irrevocably default on several covenants in MRM's financing agreements.

These agreements were crucial to MRM's success and survival. Without the financing, MRM could not carry on. It was delisted from the New York Stock Exchange and had to sell significant assets and enter into a scheme of arrangement in Bermuda.

Hancock found itself caught in the middle of a reinsurance spiral it was partially responsible for creating; the reinsurers to which Hancock reinsured its Legion risk were not paying Hancock. Industry analysts suggest that Hancock may be trying to collect in excess of $1 billion from these reinsurers. That should have been irrelevant as Hancock's obligation to pay Legion's reinsurance was independent of whether other companies were paying Hancock. Hancock knew full well what impact its unjustified failure to pay would have on MRM. It knew it had significant leverage over MRM, and it used it. And it all but destroyed MRM, which is now a shell of a company that no longer operates except in extremely limited ways. Hancock's tactic of refusing to pay its direct obligations to issuing insurance companies such as Legion provided Hancock with the time to address its difficulty in collecting from its reinsurers.

MRM filed this action to recover the hundreds of millions of dollars in damages suffered by MRM and caused by Hancock's wrongful actions. MRM's theory of recovery is straightforward: Hancock tortiously interfered with MRM's financial lifelines by causing financing agreements to be breached. It did so knowing the consequences of its actions. MRM was destroyed as a result, and it is entitled to recover significant damages.

Manulife's responses to MRM's reasonable discovery requests evidence a disregard of both the seriousness of this matter and its obligations under the rules governing discovery. The Court should require Manulife to produce the requested documents as soon as possible.

III.    **THE DISCOVERY REQUESTS**

MRM served a subpoena attaching twelve document requests on Manulife; Manulife, represented in this matter by counsel for Hancock, objected to every one of the individual document requests.[3] It produced not a single document in response to the subpoena. Each of the requests relates to matters at issue in this litigation:  the reasons for Hancock's refusal to pay and the effect on MRM of Hancock's calculated decision.  Manulife, the parent company to Hancock, should be compelled to respond to each request.  Accordingly, MRM seeks an order requiring a complete response to each of its document requests for the reasons stated below.[4]

A.    **Manulife Does Not Properly Invoke the Attorney Client Privilege or the Alleged Protection of a Confidentiality Agreement**

As a preliminary matter, Manulife raises issues of attorney client and work product privileges as well as the alleged existence of confidentiality agreements that Manulife claims are impediments to the production of documents in this case.  The generalized statements in Manulife's answers are insufficient.  Manulife must produce information sufficient to allow MRM to test the validity of the privilege and confidentiality claims as well as the alleged confidentiality agreements themselves.  The mere existence of such purported agreements does not foreclose the discovery of relevant information in this case.

B.    **Manulife Has Failed To Demonstrate That The Requested Documents Are Protected From Discovery Under The Common Interest Doctrine**

---

[3]    The subpoena and requests are attached hereto as Exhibit A.  Manulife's responses to these requests are attached hereto as Exhibit B.

[4]    Manulife and the parties have agreed that disputes relating to the subpoena may be heard in this Court.

Manulife has objected to every document request on the grounds that the requested documents are protected under the common interest doctrine. But Manulife wholly fails to demonstrate that the requested documents are protected from discovery under this doctrine. Accordingly, to the extent that Manulife's objections to MRM's requests for production of documents are premised on this doctrine, these objections should be rejected, and Manulife should be required to produce the requested information.

The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information to a third party. Katz v. AT & T Corp., 191 F.R.D. 433, 437 (E.D. Pa. 2000) (holding that communications sought by defendants were not protected from disclosure because plaintiffs failed to prove they were entitled to the common interest exception). The common interest doctrine does not create an independent privilege. Id. (common interest doctrine "depends upon a proper showing of the other elements of the attorney-client privilege.") Instead, it permits a party to share material covered by the attorney-client privilege with another party without waiving the privilege. Id. Of course, the attorney-client privilege does not "insulate underlying facts from the light of day." Dombrowski v. Bell Atlantic Corp., 128 F.Supp.2d 216, 218-19 (E.D. Pa. 2000) (information found by former in-house counsel during due diligence investigation of a company his former employer intended to merge with did not fall within the ambit of attorney-client privilege). See also In re: Diet Drugs Product Liability Litigation, 2001 WL 34133955, at *4-*5 (E.D. Pa. April 19, 2001) (attorney client privilege does not protect business and technical advice).

Under the common interest doctrine, "parties with shared interests in actual or potential litigation against a common adversary may share privileged information without waiving their right to assert the privilege." Thompson v. Glenmede Trust Co., 1995 WL 752443,

at *4 (E.D. Pa. Dec. 19, 1995). To fit within the narrow scope of the common interest doctrine,

the parties must "satisfy their burden of proving first that the material is privileged and second

that the parties had an identical legal, and not solely commercial, interest." Katz, 191 F.R.D. at

438. See also Russo v. Cabot Corp., 2001 WL 34371702, at *2 (E.D. Pa. Oct. 26, 2001); In re:

Diet Drugs, 2001 WL 34133955, at *6. Indeed, "[w]hat is important is not whether the parties

theoretically share similar interests but rather whether they demonstrate actual cooperation

toward a common legal goal." Id. at *8 (quotation omitted). Further, there must be a "palpable

threat of litigation at the time of the communication, rather than a mere awareness that one's

questionable conduct might some day result in litigation, before communications between one

possible future co-defendant and another . . . could qualify for protection." In re: Santa Fe Int'l

Corp., 272 F.3d 705, 708-11 (5th Cir. 2001) (holding that defendant's senior counsel's

memorandum, which was disclosed to offshore drilling competitors prior to filing of antitrust

class action, was not protected by the "common legal interest" doctrine).

   Here, Manulife has not satisfied its burden of proving that the requested materials

are protected by the attorney-client privilege, let alone made any attempt to demonstrate that

Hancock gave the requested documents to Manulife in view of "actual cooperation" toward a

"common legal goal." In particular, this exception cannot apply where the documents were

provided to a potential acquirer as part of a pre-acquisition due diligence examination, as is

likely the case here. At the time the purportedly privileged documents were provided by

Hancock to Manulife, there was presumably no legal or commercial relationship between them

other than perhaps a confidentiality agreement that has not been produced by Manulife. In short,

Manulife fails to articulate any valid basis for invoking the common interest doctrine and

withholding the requested discovery. Moreover, as noted above, Manulife has yet to produce a

copy of its purported confidentiality agreement with Hancock. Under these circumstances,

Manulife cannot properly invoke the protection of the common interest doctrine.

### C.    MRM's Boilerplate Objections Are Without Merit and Manulife Must Produce the Documents Requested by MRM

MRM also makes a number of "boilerplate" objections that are clearly insufficient

as a matter of law.

First, MRM objects to each document request on the grounds that the request is

"overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the

discovery of admissible evidence." See Manulife's Objections to Requests 1-12. Such

boilerplate objections are inadequate. The words of this Court in Phillips v. Dale are instructive

in this regard:

> A conclusory statement that the discovery sought is irrelevant, not
> likely to lead to the discovery of relevant information, overly
> broad, burdensome, oppressive and sought in bad faith will not
> suffice. Rather, the resisting party must show how, given the
> broad and liberal reading afforded the Federal Rules of discovery,
> each interrogatory and document request is irrelevant, overly
> broad, burdensome, oppressive, or requested in bad faith.

1987 WL 9650, at *2 (E.D. Pa. April 16, 1987) (citing Josephs v. Harris Corp., 677 F.2d 985,

992 (3d Cir. 1982)) (other citation omitted).

Second, Manulife's oft repeated assertion that the request "seeks information that

should be obtained from John Hancock, and that MRM in fact already has sought from John

Hancock in a virtually identical document request" is also meritless. See New Park

Entertainment L.L.C. v. Electric FactoryConcerts, Inc., 2000 WL 62315, at *5 (E.D. Pa. January

13, 2000) ("Practically, there is no way for the plaintiff to frame its request to eliminate the

possibility of duplication and at the same time ensure that it receives all of the documents it

seeks from third parties."). Moreover, Hancock has not shown that it provided any documents requested from it by MRM.

Third, Manulife's contention that documents exchanged during due diligence in 2003 are not relevant is completely without merit. It is inconceivable that Manulife would have proceeded with its acquisition of Hancock without conducting due diligence regarding the reinsurance spiral and making inquiries regarding Hancock's dealings with Legion and other reinsurers. This due diligence necessarily would have encompassed the issues at the heart of the instant dispute because Manulife would have investigated any risks – legal and otherwise – involved with acquiring Hancock. These risks would obviously have included Hancock's worker's compensation business and the existence of a potential reinsurance spiral that was common knowledge in the industry. Any such documents are unquestionably relevant to the instant dispute and must be produced.[5]

Manulife's remaining specific objections are also wholly without merit because MRM's document requests are clear and narrowly tailored to seek the production of relevant documents in accordance with the Federal Rules of Civil Procedure. Below, MRM will address the deficiencies of Manulife's specific objections to each category of documents.

**1.    Manulife Must Produce Documents Relating to Hancock's Decision to Refuse to Pay Reinsurance Proceeds and Discussions Relating Thereto**

**Request 5.    All documents relating to the decision of John Hancock in 1999 to cease payments to Legion Insurance Company under John Hancock's reinsurance contracts with Legion Insurance Company.**

---

[5]    This argument also applies to every other specific objection referencing Manulife's General Objections 5 and 6.

The decision to stop paying reinsurance claims lies at the heart of this dispute.
Documents relating to the decision to cease payment should be produced. In an attempt to evade
its obligations under the federal rules, Manulife distorts the nature of the above document
request. Manulife should not be permitted to recharacterize the request. It is clear, and the
documents are obviously relevant. If there are documents for which a privilege is claimed, they
should be properly identified so that the veracity of the privilege claim may be challenged, if
required.[6]

### 2.    Mistreatment of Other Reinsureds

**Request 6.    All documents relating to the decision by John Hancock in
1999 to cease payments to other cedents in the workmen's
compensation carve out market including, but not limited to,
Credit General Insurance, Clarendon Insurance, Everest
National Insurance.**

**Request 11.    All documents relating to disputes between John Hancock, as a
reinsurer, and ceding insurance companies which relate to
worker's compensation reinsurance provided by John
Hancock.**

Hancock refused to pay claims relating to reinsureds other than Legion. In this
case, Hancock will argue that it stopped paying because of severe problems at Legion. MRM is
entitled to attempt to counter this by, inter alia, establishing that Hancock also refused to pay
other reinsureds in the workmen's compensation carveout business due to the problems it was
having with its reinsurers on account of the reinsurance spiral. This is a key element is
establishing Hancock's motive for its actions. The requested documents go to the heart of that

---

[6]    This likewise applies to the responses to each request. It is not enough for a party to
make vague assertions of privilege.

10

defense, and they should be produced immediately. Vague assertions of confidentiality should not trump this clear need.

### 3.    Analysis of Hancock Losses

**Request 1.**    **All documents regarding John Hancock's losses and/or potential losses in the worker's compensation "Carve Out", "Occupational Accident" or "Alternative Worker's Compensation" businesses for the underwriting years 1994 through 1999 including business written by or similar to that written by Unicover Managers (collectively "worker's compensation carve out business").**

**Request 2.**    **All reserve analyses, reports, and/or reviews of John Hancock's losses incurred, on either gross or net of reinsurance basis, with respect to (i) the Legion Insurance Company or (ii) the workmen's compensation carve out market for the years 1994 through 1999.**

Documents relating to analyses of Hancock losses in the indicated business lines are directly relevant to this dispute and relate to the issue of the real reasons for Hancock's decision not to pay the reinsurance. These documents will allow MRM to counter Hancock's argument that problems at Legion justified the refusal to pay.

### 4.    Meetings with Other Reinsurers

**Request 4.**    **All documents relating to meetings or coordinated actions among reinsurers in the worker's compensation carve out market including, but not limited to, Manulife, Cologne Re, Lincoln National, Reliastar, Reliance National, CIGNA and Phoenix, for the years including 1994 through 1999.**

Documents relating to meetings between or among reinsurers with regard to the subject of the reinsurance spiral and/or Legion are directly relevant or at the very least likely to lead to the discovery of admissible evidence. Evidence produced in the underlying arbitration demonstrates that Hancock willfully communicated allegations of fraud and malfeasance about Legion to other companies which were also reinsurers of Legion. These actions compounded the difficulties that Legion and MRM had to deal with due to Hancock's unjustified non payment.

11

These documents are neither privileged nor confidential, and Manulife should be required to produce them.

### 5.     Documents Relating to the Charge for the Unicover Spiral

**Request 7.**     **All documents relating to the decision of John Hancock to take a charge for $133 million after tax loss relating to Unicover related reinsurance disputes including analyses of how such charge was calculated including, but not limited to, presentations to the Board of Directors of John Hancock.**

This request seeks information relating to the charge Hancock took for the Unicover spiral. Again, documents relating to this huge spiral and its effect on Hancock are relevant to the issue of the true reasons for Hancock's refusal to honor its reinsurance agreements with Legion and others. The nature of the spiral and its effect on Hancock are fair game, as Hancock has suggested that its refusal to pay Legion was motivated by problems at Legion. MRM is entitled to test the veracity of that assertion by obtaining these relevant documents.

### 6.     Hancock's Reinsurers and the Spiraling Reinsurance Market

**Request 9.**     **All documents regarding the possibility of John Hancock being involved in a so-called reinsurance spiral with respect to the worker's compensation carve out market for the years 1994 through 1999.**

**Request 10.**     **All documents regarding John Hancock's strategy for resolving losses and/or potential losses associated with the potential reinsurance spiral with respect to the worker's compensation carve out market for the years 1994 through 1999.**

**Request 3.**     **All presentations, reviews, and/or reports to the Board of Directors of John Hancock relating to John Hancock's exposure and/or potential exposure on worker's compensation carve out business or other "Unicover" type business.**

Hancock claims it stopped paying Legion reinsurance because of concerns with Legion. It is apparent, however, that the reinsurance spiral affecting Hancock and the refusal of Hancock's reinsurers to pay Hancock played a role in Hancock's decision. The requested

documents are directly relevant to Hancock's defense, and Manulife, Hancock's parent company,

should not be permitted to assert blanket objections to requests for these documents. These

documents are clearly relevant to the instant dispute and, as discussed above, Manulife has

utterly failed to meet its burden of showing that any such documents in its possession are

protected from discovery.

       7.     **Manulife Employees**

**Request 12.   A list of the ManuLife employees, advisors and law firms who conducted the due diligence investigations of John Hancock worker's compensation business prior to ManuLife's acquisition of John Hancock.**

This straightforward document request simply seeks documents regarding the

identities of people who conducted the due diligence investigations of John Hancock's worker's

compensation business. These documents are clearly relevant to the instant dispute. MRM must

be able to identify individuals who would have knowledge related to these issues in order to

prepare its case for trial.

## IV.   CONCLUSION

MRM respectfully requests that the United States District Court transfer MRM's

Motion to Compel Production of Documents in Compliance with Subpoena to the United States

District Court for the Eastern District of Pennsylvania so that Manulife may be required to

produce the subpoenaed documents as soon as possible.

Ilan N. Barzilay (BBO #643978)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
Tel. 617.646.8000
Fax 617.646.8646


OF COUNSEL
Douglas Y. Christian
Kelley A. Grady
Jeanne T. Donnelly
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Attorneys for Plaintiff
Mutual Risk Management


Date:  March 4, 2005

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

MUTUAL RISK MANAGEMENT, LTD.,          :
                                        :
            Plaintiff,                   :
                                        :
            v.                           :       UNITED STATES DISTRICT COURT FOR
                                        :       THE EASTERN DISTRICT OF
JOHN HANCOCK LIFE INSURANCE             :       PENNSYLVANIA
COMPANY f/k/a JOHN HANCOCK              :       CIVIL ACTION NO. 2004-00347-NS
MUTUAL LIFE INSURANCE COMPANY,          :
                                        :
            Defendant.                   :
                                        :
                                        :

## O R D E R

       AND NOW, this _____ day of _____, 2005, upon consideration of the

Motion to Compel Production of Documents in Compliance With Subpoena of Plaintiff Mutual

Risk Management, Ltd. ("MRM") and of the submissions of the parties relating thereto, it is

hereby ORDERED that MRM's Motion to Compel Production of Documents in Compliance

With Subpoena is TRANSFERRED to the United States District Court of the Eastern District of

Pennsylvania.

       IT IS SO ORDERED.

                    BY THE COURT:

                    _____
                    J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

MUTUAL RISK MANAGEMENT, LTD.,   :
                                   :
          Plaintiff,             :
                                     :
          v.                  :     UNITED STATES DISTRICT COURT FOR
                                   :     THE EASTERN DISTRICT OF
JOHN HANCOCK LIFE INSURANCE    :     PENNSYLVANIA
COMPANY f/k/a JOHN HANCOCK      :     CIVIL ACTION NO. 2004-00347-NS
MUTUAL LIFE INSURANCE COMPANY, :
                                   :
          Defendant.          :
                                   :
                                   :

**CERTIFICATE THAT MOVING PARTY MADE GOOD FAITH ATTEMPT AT
INFORMAL RESOLUTION**

       I, Douglas Y. Christian, state that I am the attorney for Mutual Risk Management,

LTD., plaintiff and moving party in <u>Mutual Risk Management, LTD. v. John Hancock Life</u>

<u>Insurance Company f/k/a John Hancock Mutual Life Insurance Company</u>, C.A. No. 2004-00347-

NS.  Prior to filing this motion, I have attempted to confer in good faith with counsel for

Defendant John Hancock Mutual Life Insurance Company and Manulife Financial Corporation

to resolve this matter without the filing of the instant Motion to Compel Production of

Documents in Compliance with Subpoena.  In particular, I and counsel for the opposing party

have had several telephonic discussions over the past few weeks in an effort to resolve our

differences relating to the motion, after providing drafts of the motion to opposing counsel.

       I certify to the court that these facts are true under penalty of perjury, and if called

as a witness to testify in this matter, I could and would competently testify to each of these facts.

Dated: March 4, 2005

/s/ Douglas Y. Christian
Douglas Y. Christian
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Attorney for Plaintiff Mutual Risk
Management, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to

Compel Production of Documents in Compliance with Subpoena of Plaintiff Mutual Risk

Management and the accompanying Certificate That Moving Party Made Good Faith

Attempt at Informal Resolution were served this 4th day of March, 2005, on the

following counsel of record:

**Via First Class Mail**
Kathryn A. Dux, Esquire
German, Gallagher & Murtagh
The Bellevue, Suite 500
200 S. Broad Street
Philadelphia, PA 19102

**Via Hand Delivery**
Mitchell S. King, Esquire
Joseph S. Sano, Esquire
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109

Ilan N. Barzilay

AO 88 (Rev. 1/94) Subpoena in a Civil Case -

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ **MASSACHUSETTS** _____

Mutual Risk Management Ltd.

### V.

John Hancock Life Insurance Company f/k/a
John Hancock Mutual Life Insurance Company

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1]  2004-00347-NS

United States District Court for the
Eastern District of Pennsylvania

TO:   James Gallagher
      Manulife Financial Corporation
      73 Tremont Street, Suit 1300
      Boston, Massachusetts 02108-3915

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A.

| PLACE | DATE AND TIME  on or before |
|---|---|
| APS, 1004 Pheasant Lane, Middleboro, MA 02346 | Dec. 23, 2004 at 10 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(B).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 12/8/04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Wayne C. Stansfield, Esq., Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street, Philadelphia, PA 19103

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## <u>Schedule A</u>

### I. <u>DEFINITIONS</u>

1.      The words "ManuLife," "you," or "your" shall mean ManuLife Financial Corporation, as well as its parent corporations, subsidiaries, predecessors, and affiliated companies, and their respective agents, attorneys, accountants, consultants, independent contractors, and any other individuals or entities associated or affiliated with them or purporting to act on their behalf.

2.      The word "<u>MRM</u>" shall mean Mutual Risk Management Ltd.

3.      The term "John Hancock" shall mean John Hancock Life Insurance Company as well as its parent corporations, subsidiaries, predecessors, and affiliated companies, and their respective agents, attorneys, accountants, consultants, independent contractors, and any other individuals or entities associated or affiliated with them or purporting to act on their behalf.

4.      "<u>Complaint</u>" means the Complaint filed by MRM in the United States District Court for the Eastern District of Pennsylvania, Civil Action No. 2004-00347-NS.

5.      The word "<u>document</u>" as used herein shall be understood to mean all written, graphic, or otherwise recorded matter, however produced or reproduced, in the actual or constructive possession, custody, care or control of you, your agents and attorneys, or any of them, including but not limited to, originals and all copies of correspondence, tapes, videotapes, disks, notes, photographs, sound recordings, memoranda of all types, reports, emails, copies of tax returns and records, receipts, bills, invoices, purchase orders, charge slips, hotel charges, working papers, computer printouts, charts, statistical records, delivery records, stenographers' notebooks, desk calendars, appointment books, diaries, time sheets and logs, job, matter and transaction files, and any papers or recordings similar thereto, whether made or received by you.

6.      The term "<u>identify</u>" and "<u>identity of</u>" as used herein in connection with a document or documents means:

(a)      Furnish the name and date of that document, the name and address of the person, if any, to whom the document was addressed, the names and addresses of all

persons to whom the copies of the documents were or have been sent, and the firm or firms with which all such persons were connected at the date of the document; and

(b)    State whether you are in possession of the original of the document or a copy thereof, and if not in possession of the original or a copy, furnish the name and address of the custodian of the original or a copy.

7.    The terms "regarding", "relating to," "in relation to" or "related to" shall mean anything connected, associated, related to, or in any manner whatsoever having to do with the substance or subject matter of each document request herein.

8.    The singular of any word used herein shall be deemed to include the plural of such word and the plural shall include the singular, and words in the masculine, feminine or neuter shall include each of the other genders.

9.    The conjunctions "and" and "or" shall be interpreted to mean "and/or," and shall not be interpreted to exclude any information otherwise within the scope of these requests.

## II. INSTRUCTIONS

With respect to each of the following requests, you shall identify and/or produce all documents which are known to you or which can be located or discovered by you through diligent effort on the part of you, your employees, representatives, attorneys, or accountants, including but not limited to all documents which are in the business or personal files of your employees, in the possession of your representatives, attorneys, or accountants, or accessible to you, your employees, or your representatives, attorneys, or accountants.

### A. Destroyed Documents

If any documents requested herein or fairly comprised within the scope of the following requests have been lost or destroyed, you shall provide in lieu of a true and correct copy thereof a list of each document so lost or destroyed together with the following information: (a) the date of origin, (b) a brief description of such document; (c) the author of the document; (d) the date upon which the document was lost or destroyed; and (e) a brief statement of the manner in which the document was lost or destroyed.

## B. Objections to Production

In the event that any objection is made to the production of any document fairly comprised within the scope of the following requests, you shall furnish in lieu of the production of such document a list of each document withheld from production together with the following information: (a) the reason for withholding production; (b) a statement of the facts constituting the basis for your withholding the document from production; and (c) a brief description of the documents withheld, including (i) the date upon which the document was originated, (ii) the identity of its author or preparer (iii) the identity of each person who was a recipient of the document, (iv) the specific request which encompasses the document, (v) a brief description of the subject matter of the document, and (vi) the identity of all persons who have personal knowledge of subject matter.

## C. Business, Trade Secret or Proprietary Information

If any of the following requests comprise documents which you contend contain confidential, business, trade secret or proprietary information, you shall not withhold such documents on the grounds of confidentiality but shall forthwith advise all parties to this litigation of the confidential nature of such material and request all parties to stipulate to the entry of an appropriate order preserving such confidentiality.

## III. DOCUMENTS

1.    All documents regarding John Hancock's losses and/or potential losses in the worker's compensation "Carve Out", "Occupational Accident" or "Alternative Worker's Compensation" businesses for the underwriting years 1994 through 1999 including business written by or similar to that written by Unicover Managers (collectively "worker's compensation carve out business").

2.    All reserve analyses, reports, and/or reviews of John Hancock's losses incurred, on either gross or net of reinsurance basis, with respect to (i) Legion Insurance Company business or (ii) the worker's compensation carve out market for the years 1994 through 1999.

3.    All presentations, reviews, and/or reports to the Board of Directors of John Hancock relating to John Hancock's exposure and/or potential exposure on worker's compensation carve out business or other "Unicover" type business.

4.    All documents relating to meetings or coordinated actions among reinsurers in the worker's compensation carve out market including, but not limited to, Manulife, Cologne Re, Lincoln National, Reliastar, Reliance National, CIGNA and Phoenix, for the years including 1994 through 1999.

5.    All documents relating to the decision of John Hancock in 1999 to cease payments to Legion Insurance Company under John Hancock's reinsurance contracts with Legion Insurance Company.

6.    All documents relating to the decision by John Hancock in 1999 to cease payments to other cedents in the worker's compensation carve out market including, but no limited to, Credit General Insurance, Clarendon Insurance, Everest National.

7.    All documents relating to the decision of John Hancock to take a charge for $133 million after tax loss relating to Unicover related reinsurance disputes including analyses of how such charge was calculated including, but not limited to, presentations to the Board of Directors of John Hancock.

8.    All documents summarizing and/or explaining the Quota Share or aggregate excess reinsurance contracts protecting John Hancock on its reinsurance contracts with Legion Insurance Company.

9.    All documents regarding the possibility of John Hancock being involved in a so-called reinsurance spiral with respect to the worker's compensation carve out market for the years 1994 through 1999.

- 4 -

10.    All documents regarding John Hancock's strategy for resolving losses and/or potential losses associated with the potential reinsurance spiral with respect to the worker's compensation carve out market for the years 1994 through 1999.

11.    All documents relating to disputes between John Hancock, as a reinsurer, and ceding insurance companies which relate to worker's compensation reinsurance provided by John Hancock.

12.    A list of the ManuLife employees, advisors and law firms who conducted the due diligence investigations of John Hancock worker's compensation business prior to ManuLife's acquisition of John Hancock.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MUTUAL RISK MANAGEMENT LTD.,        )
                                    )
                    Plaintiff,      )
                                    )
                                    )        United States District Court
        v.                          )        for the Eastern District of
                                    )        Pennsylvania
JOHN HANCOCK LIFE INSURANCE         )        C.A. No. 04-0347
COMPANY f/k/a JOHN HANCOCK          )
MUTUAL LIFE INSURANCE COMPANY,      )
                                    )
                    Defendant.      )
                                    )

## MANULIFE FINANCIAL CORPORATION'S OBJECTIONS AND RESPONSES TO MUTUAL RISK MANAGEMENT LTD'S SUBPOENA

Manulife Financial Corporation ("Manulife") hereby responds and objects to

Mutual Risk Management Ltd's ("MRM") subpoena.  This Objection incorporates and is

subject to an agreement between counsel for Manulife, and counsel for MRM in which it

was agreed that:

1.  Manulife will accept service of the subpoena without prejudice to any rights it

    may have in connection with any other subpoena to challenge any similar

    method of service;

2.  The agreed due date for Manulife's initial response including objections to the

    subpoena is January 3, 2004;

3.  The subpoena is to be interpreted as being directed only at documents in the

    possession of Manulife, and not documents in the possession of John

    Hancock, notwithstanding any broader definition of Manulife within the

    subpoena;

1

4.    To the extent that motion practice becomes necessary in connection with the

subpoena, Manulife and MRM agree that such motions will be presented to

the Eastern District of Pennsylvania for resolution, as if the subpoena were

issued from that district.

## MANULIFE'S OBJECTIONS TO MRM'S
## DEFINITIONS AND INSTRUCTIONS

### Objections to MRM's Definitions

Manulife objects to the definitions propounded by MRM to the extent that such

definitions could be interpreted as requiring production beyond that which is required

pursuant to Rule 45 based on reasonable efforts to identify responsive documents.

Manulife shall interpret all words specifically defined in a manner consistent with its

obligations under the rules.

### Objections To MRM's Instructions

**MRM's General Instruction:**

> With respect to each of the following requests, you shall
> identify and/or produce all documents which are known to
> you or which can be located or discovered by you through
> diligent effort on the part of you, your employees,
> representatives, attorneys or accountants, including but not
> limited to all documents which are in the business or
> personal files of your employees, in the possession of your
> representatives, attorneys, or accountants, or accessible to
> you, your employees, or your representatives, attorneys, or
> accountants.

**Objection:**    Manulife objects to this instruction as beyond the requirements imposed

on a non-party responding to a subpoena under Fed. R. Civ. P. 45. Manulife will comply

with its obligations under the rules.

2

**MRM's Instruction Re:**    **Destroyed Documents:**

> If any documents requested herein or fairly comprised within the scope of the following requests have been lost or destroyed, you shall provide is lieu of a true and correct copy thereof a list of each document so lost or destroyed together with the following information: (a) the date or origin; (b) a brief description of such document; (c) the author of the document; (d) the date upon which the document was lost or destroyed; (e) a brief statement of the manner in which the document was lost or destroyed.

**Objection:**    Manulife objects to this instruction as beyond the requirements imposed on a non-party responding to a subpoena under Fed. R. Civ. P. 45, which does not impose any requirement regarding the identification of lost or destroyed documents. Manulife further objects on the grounds that the instruction appears to be an effort to propound interrogatories with respect to lost or destroyed documents, and thus an effort to contravene the limitations on non-party discovery under the rules. Manulife will comply with its obligations under the rules.

**MRM's Instruction Re:**    **Objections to Production**

> In the event that any objection is made to the production of any document fairly comprised within the scope of the following requests, you shall furnish in lieu of the production of such document a list of each document withheld from production together with the following information: (a) the reason for withholding production; (b) a statement of facts constituting the basis for your withholding the document from production; and (c) a. brief description of the documents withheld, including (i) the date upon which the document was originated, (ii) the identity of its author or preparers (iii) the identity of each person who was a recipient of the document, (iv) the specific request which encompasses the document, (v) a brief description of the subject matter of the document, and (vi) the identity of all persons who have personal knowledge of subject matter.

3

**Objection:**    Manulife objects to this instruction as beyond the requirements imposed

on a non-party responding to a subpoena under Fed. R. Civ. P. 45, which requires only

that, "[w]hen information … is withheld on a claim that it is privileged or subject to

protection as trial preparation materials, the claim shall be supported by a description

of the nature of the documents, communications, or things not produced that is

sufficient to enable the demanding party to contest the claim."  Manulife will comply

with its obligations under the rules, and is currently preparing a log, the specific

contents of which will be the subject of further discussion with counsel for MRM.


**MRM's Instruction Re:**        **Business, Trade Secret or Proprietary Information**

If any of the following requests comprise documents
which you contend contain confidential, business, trade
secret or proprietary information, you shall not withhold
such documents on the grounds of confidentiality but
shall forthwith advise all parties to this litigation of the
confidential nature of such material and request all
parties to stipulate to the entry of an appropriate order
preserving such confidentiality.

**Objection:**    Manulife objects to this instruction as beyond the requirements imposed

on a non-party responding to a subpoena under Fed. R. Civ. P. 45, which specifically

addresses limitations regarding the disclosure of trade secrets and confidential

commercial information.  Manulife will comply with its obligations under the rules.


4

**MANULIFE'S OBJECTIONS TO MRM'S**
**SCHEDULE OF REQUESTED DOCUMENTS**

**General Objections**

1.      Manulife objects to each request to the extent it calls for the production of

documents and information protected from disclosure under the work product doctrine,

the attorney-client privilege, or any other applicable privilege, or otherwise seeks

confidential or proprietary information.

2.      Manulife objects to each request to the extent it is unduly burdensome and

overly broad.

3.      Manulife objects to each request to the extent it calls for the duplication of

John Hancock's efforts to comply with its discovery obligations as a party to this action.

4.      Manulife objects to each request to the extent it seeks to impose

obligations on it beyond those set forth in the Federal Rules of Civil Procedure.

5.      To the extent that these requests seek documents generated in the course

of any due diligence review performed by Manulife in connection with its acquisition of

John Hancock in 2003, Manulife objects that the requests are irrelevant, and are not

reasonably calculated to lead to the discovery of admissible evidence.  Based on MRM's

allegations, the alleged consequences resulting from John Hancock's alleged tort

occurred in February 2002 when MRM defaulted on certain financing agreements and

allegedly cancelled a planned public offering, and thus any documents generated by

Manulife during any due diligence review conducted in connection with a purchase more

than a year later can have no relevance to the dispute.  For this reason, Manulife will not

be logging or producing such documents.  Should Manulife be required to log or produce

such documents notwithstanding this objection, it reserves its right to supplement its responses and objections and raise any and/all bases for non-production.

6.   To the extent that these requests seek documents relating to Manulife's own participation in workers compensation carve out reinsurance during the relevant time period, Manulife objects that the requests are irrelevant, and are not reasonably calculated to lead to the discovery of admissible evidence. Manulife's conduct is not at issue in the litigation between MRM and John Hancock, and thus there is no conceivable basis upon which such documents would be relevant to that dispute. Moreover, any arguable relevance of such documents would be grossly outweighed by the burden of production. For this reason, as a general matter, Manulife will not be logging or producing such documents. Should Manulife be required to log or produce such documents notwithstanding this objection, it reserves its right to supplement its responses and objections and raise any and/all bases for non-production.

### Manulife's Specific Objections

Subject to and without waiving the foregoing General Objections, Manulife objects to the individual requests in Schedule A to the subpoena as follows:

**Request 1:**   All documents regarding John Hancock's losses or potential losses in the worker's compensation "Carve Out", "Occupational Accident" or "Alternative Workers Compensation" businesses for the underwriting years 1994 through 1999 including business written by or similar to that written by Unicover Managers (collectively "worker's compensation carve out business").

**Objections and Response:**   Manulife objects on the grounds that the request is vague and ambiguous in connection with the undefined phrase "business ... similar to that written by Unicover Managers." Manulife further objects on the grounds that the request

6

is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence. MRM's claims in this action relate solely to John Hancock's alleged interference with MRM's performance of two financing agreements and an anticipated stock offering. The requested documentation is irrelevant to the claims asserted by MRM, and any conceivable relevance is outweighed by the burden of production. Manulife objects on the grounds that this request seeks information that should be obtained from John Hancock, and that MRM in fact already has sought from John Hancock in a virtually identical document request. Manulife should not be called on to duplicate John Hancock's efforts with respect to MRM's discovery requests. To the extent Manulife has responsive documents, they were obtained from John Hancock during Manulife's pre-merger due diligence review or constitute Manulife's work product generated during such review. These documents are attorney-client privileged or are protected from disclosure as attorney work product. These documents are also subject to a confidentiality/non-disclosure agreement related to the merger negotiations between Manulife and John Hancock, which recognizes a commonality of interest with respect to pending or threatened legal proceedings in connection with the exchange of privileged or work product materials. Notwithstanding these specific objections as to relevance, overbreadth and burden, but subject to its general objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged documents at the present time.

**Request 2:**     All reserve analyses, reports, and/or reviews of John Hancock's losses incurred, on either gross or net of reinsurance basis, with respect to (i) the Legion Insurance Company business or (ii) the worker's compensation carve out market for the years 1994 through 1999.

7

**Objections and Response:**    Manulife objects on the grounds that the request is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence.  MRM's claims in this action relate solely to John Hancock's alleged interference with MRM's performance of two financing agreements and an anticipated stock offering.  The requested documentation is irrelevant to the claims asserted by MRM, and any conceivable relevance is outweighed by the burden of production.  Manulife objects on the grounds that this request seeks information that should be obtained from John Hancock, and that MRM in fact already has sought from John Hancock in a virtually identical document request.  Manulife should not be called on to duplicate John Hancock's efforts with respect to MRM's discovery requests.  To the extent Manulife has responsive documents, they were obtained from John Hancock during Manulife's pre-merger due diligence review, or constitute Manulife's work product generated during such review.  These documents are attorney-client privileged or are protected from disclosure as attorney work product.    These documents are subject to a confidentiality/non-disclosure agreement related to the merger negotiations between Manulife and John Hancock, which recognizes a commonality of interest with respect to pending or threatened legal proceedings in connection with the exchange of privileged or work product materials.  Notwithstanding these specific objections as to relevance, overbreadth and burden, but subject to its general objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged documents at the present time.

**Request 3:**    All presentations, reviews, and/or reports to the Board of Directors of John Hancock relating to John Hancock's exposure and/or potential exposure on worker's compensation carve out business of other "Unicover" type business.

**Objections and Response:**    Manulife objects on the grounds that the request is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence.  MRM's claims in this action relate

solely to John Hancock's alleged interference with MRM's performance of two financing agreements and an anticipated stock offering. The requested documentation is irrelevant to the claims asserted by MRM, and any conceivable relevance is outweighed by the burden of production. Manulife objects on the grounds that this request seeks information that should be obtained from John Hancock, and that MRM in fact already has sought from John Hancock in a virtually identical document request. Manulife should not be called on to duplicate John Hancock's efforts with respect to MRM's discovery requests. To the extent Manulife has responsive documents, they were obtained from John Hancock during Manulife's pre-merger due diligence review or constitute Manulife's work product generated during such review. These documents are attorney-client privileged or are protected from disclosure as attorney work product.   These documents are subject to a confidentiality/non-disclosure agreement related to the merger negotiations between Manulife and John Hancock, which recognizes a commonality of interest with respect to pending or threatened legal proceedings in connection with the exchange of privileged or work product materials. Notwithstanding these specific objections as to relevance, overbreadth and burden, but subject to its general objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged documents at the present time.

**Request 4:**     All documents relating to meetings or coordinated actions among reinsurers in the worker's compensation carve out market including, but not limited to, Manulife, Cologne Re, Lincoln National, Reliastar, Reliance National, CIGNA and Phoenix, for the years including 1994 through 1999.

**Objections and Response:**   Manulife objects on the grounds that the request is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence. MRM's claims in this action relate solely to John Hancock's alleged interference with MRM's performance of two financing agreements and an anticipated stock offering. The requested

documentation is irrelevant to the claims asserted by MRM. Manulife objects on the grounds that the request is burdensome and oppressive, and any conceivable relevance is grossly outweighed by the burden in producing such information. Manulife further objects on the grounds that this request seeks information that should be obtained from John Hancock, and that MRM in fact already has sought from John Hancock in a virtually identical document request. Manulife should not be called on to duplicate John Hancock's efforts with respect to MRM's discovery requests. To the extent Manulife has responsive documents obtained from John Hancock during Manulife's pre-merger due diligence review, or Manulife's work product generated during such review, such documents are attorney-client privileged or are protected from disclosure as attorney work product. Such documents are also subject to a confidentiality/non-disclosure agreement related to the merger negotiations between Manulife and John Hancock, which recognizes a commonality of interest with respect to pending or threatened legal proceedings in connection with the exchange of privileged or work product materials. Manulife further objects to the extent that Manulife has any other documents relating to "meetings or coordinated actions with reinsurers that did not involve both Legion and John Hancock. Such documents are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in MRM's dispute with John Hancock. Subject to this objection, and notwithstanding Manulife's other objections as to relevance, overbreadth and burden, but subject to its general objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged documents at the present time.

**Request 5:**     All documents relating to the decision of John Hancock in 1999 to cease payments to Legion Insurance Company under John Hancock's reinsurance contracts with Legion Insurance Company.

**Objections and Response:**   Manulife objects on the grounds that the request is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence. MRM's claims in this action relate solely to John Hancock's alleged interference with MRM's performance of two

financing agreements and an anticipated stock offering. The requested documentation is irrelevant to the claims asserted by MRM, and any conceivable relevance is outweighed by the burden of production. Manulife objects on the grounds that the request is vague and ambiguous regarding John Hancock's decisions in connection with payments to Legion pursuant to the reinsurance contracts. Manulife will interpret the request as seeking: All documents in connection with John Hancock's decision(s) in connection with payment of Legion pursuant to the reinsurance contracts. Manulife objects on the grounds that this request seeks information that should be obtained from John Hancock, and that MRM in fact already has sought from John Hancock in a virtually identical document request. Manulife should not be called on to duplicate John Hancock's efforts with respect to MRM's discovery requests. To the extent Manulife has responsive documents, they were obtained from John Hancock during Manulife's pre-merger due diligence review or constitute Manulife's work product generated during such review. These documents are attorney-client privileged or are protected from disclosure as attorney work product. These documents are subject to a confidentiality/non-disclosure agreement related to the merger negotiations between Manulife and John Hancock, which recognizes a commonality of interest with respect to pending or threatened legal proceedings in connection with the exchange of privileged or work product materials. Notwithstanding these specific objections as to relevance, overbreadth and burden, but subject to its general objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged documents at the present time.

**Request 6:**    All documents relating to the decision by John Hancock in 1999 to cease payments to other cedents in the worker's compensation carve-out business including, but not limited to, Credit General Insurance, Clarendon Insurance, [and] Everest National Insurance.

**Objections and Response:**    Manulife objects on the grounds that the request is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence. MRM's claims in this action relate

solely to John Hancock's alleged interference with MRM's performance of two
financing agreements and an anticipated stock offering. The requested
documentation is irrelevant to the claims asserted by MRM, and any conceivable
relevance is outweighed by the burden of production. Manulife objects on the
grounds that the request is vague and ambiguous regarding John Hancock's decisions
with respect to its cedents, and is burdensome and oppressive, and any conceivable
relevance is grossly outweighed by the burden in producing such information.
Manulife further objects on the grounds that this request seeks information that
should be obtained from John Hancock, and that MRM in fact already has sought
from John Hancock in a virtually identical document request. Manulife should not
be called on to duplicate John Hancock's efforts with respect to MRM's discovery
requests. To the extent Manulife has responsive documents, they were obtained
from John Hancock during Manulife's pre-merger due diligence review or constitute
Manulife's work product generated during such review. These documents are
attorney-client privileged or are protected from disclosure as attorney work product.
These documents are subject to a confidentiality/non-disclosure agreement related to
the merger negotiations between Manulife and John Hancock, which recognizes a
commonality of interest with respect to pending or threatened legal proceedings in
connection with the exchange of privileged or work product materials.
Notwithstanding these specific objections as to relevance, overbreadth and burden,
but subject to its general objections no.s 5 and 6, Manulife is unaware of any
responsive non-privileged documents at the present time.

**Request 7:**    All documents relating to the decision of John Hancock to take a
charge for $133 million after tax loss relating to the Unicover related
reinsurance disputes including analyses of how such charge was
calculated including, but not limited to, presentations to the Board of
Directors of John Hancock.

**Objections and Response:**   Manulife objects on the grounds that the request is
overbroad and seeks information which is neither relevant, nor reasonably likely to
lead to the discovery of admissible evidence. MRM's claims in this action relate

solely to John Hancock's alleged interference with MRM's performance of two financing agreements and an anticipated stock offering. The requested documentation is irrelevant to the claims asserted by MRM, and any conceivable relevance is outweighed by the burden of production. Manulife objects on the grounds that this request seeks information that should be obtained from John Hancock, and that MRM in fact already has sought from John Hancock in a virtually identical document request. Manulife should not be called on to duplicate John Hancock's efforts with respect to MRM's discovery requests. To the extent Manulife has responsive documents; they were obtained from John Hancock during Manulife's pre-merger due diligence review. or constitute Manulife's work product generated during such review. These documents are attorney-client privileged or are protected from disclosure as attorney work product.    These documents are subject to a confidentiality/non-disclosure agreement related to the merger negotiations between Manulife and John Hancock, which recognizes a commonality of interest with respect to pending or threatened legal proceedings in connection with the exchange of privileged or work product materials. Notwithstanding these specific objections as to relevance, overbreadth and burden, but subject to its general objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged documents at the present time.

**Request 8:**    All documents summarizing and/or explaining the Quota Share or aggregate excess reinsurance contracts protecting John Hancock on its reinsurance contracts with Legion Insurance Company.

**Objections and Response:**    Manulife objects on the grounds that the request is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence. MRM's claims in this action relate solely to John Hancock's alleged interference with MRM's performance of two financing agreements and an anticipated stock offering. The requested documentation is irrelevant to the claims asserted by MRM, and any conceivable relevance is outweighed by the burden of production. Manulife objects on the

grounds that this request seeks information that should be obtained from John Hancock, and that MRM in fact already has sought from John Hancock in a virtually identical document request.  Manulife should not be called on to duplicate John Hancock's efforts with respect to MRM's discovery requests.  To the extent Manulife has responsive documents, they were obtained from John Hancock during Manulife's pre-merger due diligence review or constitute Manulife's work product generated during such review.  These documents are attorney-client privileged or are protected from disclosure as attorney work product.   These documents are subject to a confidentiality/non-disclosure agreement related to the merger negotiations between Manulife and John Hancock, which recognizes a commonality of interest with respect to pending or threatened legal proceedings in connection with the exchange of privileged or work product materials.  Notwithstanding these specific objections as to relevance, overbreadth and burden, but subject to its general objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged documents at the present time.

**Request 9:**    All documents regarding the possibility of John Hancock being involved in a so-called reinsurance spiral with respect to the worker's compensation carve out market for the years 1994 through 1999.

**Objections and Response:**   Manulife objects on the grounds that the request is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence.  MRM's claims in this action relate solely to John Hancock's alleged interference with MRM's performance of two financing agreements and an anticipated stock offering.  The requested documentation is irrelevant to the claims asserted by MRM, and any conceivable relevance is outweighed by the burden of production.  Manulife objects on the grounds that the request is vague and ambiguous with respect to the undefined phrase "so-called reinsurance spiral."  Manulife further objects on the grounds that this request seeks information that should be obtained from John Hancock, and that

14

MRM in fact already has sought from John Hancock in a virtually identical document request. Manulife should not be called on to duplicate John Hancock's efforts with respect to MRM's discovery requests. To the extent Manulife has responsive documents, they were obtained from John Hancock during Manulife's pre-merger due diligence review or constitute Manulife's work product generated during such review. These documents are attorney-client privileged or are protected from disclosure as attorney work product. These documents are subject to a confidentiality/non-disclosure agreement related to the merger negotiations between Manulife and John Hancock, which recognizes a commonality of interest with respect to pending or threatened legal proceedings in connection with the exchange of privileged or work product materials. Notwithstanding these specific objections as to relevance, overbreadth and burden, but subject to its general objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged documents at the present time.

**Request 10:**    All documents regarding John Hancock's strategy for resolving losses and/or potential losses associated with the potential reinsurance spiral with respect to the worker's compensation carve out market for the years 1994 through 1999.

**Objections and Response:**    Manulife objects on the grounds that the request is overbroad and seeks information which is neither relevant, nor reasonably likely to lead to the discovery of admissible evidence. MRM's claims in this action relate solely to John Hancock's alleged interference with MRM's performance of two financing agreements and an anticipated stock offering. The requested documentation is irrelevant to the claims asserted by MRM, and any conceivable relevance is outweighed by the burden of production. Manulife objects on the grounds that the request is vague and ambiguous with respect to the undefined phrase "potential reinsurance spiral." Manulife further objects on the grounds that this request seeks information that should be obtained from John Hancock, and that

MRM in fact already has sought from John Hancock in a virtually identical
document request. Manulife should not be called on to duplicate John Hancock's
efforts with respect to MRM's discovery requests. To the extent Manulife has
responsive documents, they were obtained from John Hancock during Manulife's
pre-merger due diligence review or constitute Manulife's work product generated
during such review. These documents are attorney-client privileged or are protected
from disclosure as attorney work product.    These documents are subject to a
confidentiality/non-disclosure agreement related to the merger negotiations between
Manulife and John Hancock, which recognizes a commonality of interest in
connection with the exchange of privileged or work product materials.
Notwithstanding these specific objections as to relevance, overbreadth and burden,
but subject to its general objections no.s 5 and 6, Manulife is unaware of any
responsive non-privileged documents at the present time.

**Request 11:**   All documents relating to disputes between John Hancock, as a
reinsurer, and ceding insurance companies which relate to worker's compensation
reinsurance provided by John Hancock.

**Objections and Response:**   Manulife objects on the grounds that the request is
overbroad and seeks information which is neither relevant, nor reasonably likely to
lead to the discovery of admissible evidence. MRM's claims in this action relate
solely to John Hancock's alleged interference with MRM's performance of two
financing agreements and an anticipated stock offering. The requested
documentation is irrelevant to the claims asserted by MRM, and any conceivable
relevance is outweighed by the burden of production. Manulife objects on the
grounds that the request is burdensome and oppressive, and any conceivable
relevance is grossly outweighed by the burden in producing such information.
Manulife further objects on the grounds that this request seeks information that
should be obtained from John Hancock, and that MRM in fact already has sought
from John Hancock in similar document requests. Manulife should not be called on

16

to duplicate John Hancock's efforts with respect to MRM's discovery requests. To
the extent Manulife has responsive documents, they relate to Manulife's pre-merger
due diligence review were obtained from John Hancock during Manulife's pre-
merger due diligence review or constitute Manulife's work product generated during
such review. These documents are attorney-client privileged or are protected from
disclosure as attorney work product.    These documents are subject to a
confidentiality/non-disclosure agreement related to the merger negotiations between
Manulife and John Hancock, which recognizes a commonality of interest with
respect to pending or threatened legal proceedings in connection with the exchange
of privileged or work product materials. Notwithstanding these specific objections as
to relevance, overbreadth and burden, but subject to its general objections no.s 5 and
6, Manulife is unaware of any responsive non-privileged documents at the present
time.

**Request 12:**    A list of the Manulife employees, advisors and law firms who conducted
the due diligence investigations of John Hancock's worker's
compensation business prior to Manulife's acquisition of John Hancock.

**Objections and Response:**    Manulife objects on the grounds that the request is
overbroad and seeks information which is neither relevant, nor reasonably likely to
lead to the discovery of admissible evidence. MRM's claims in this action relate
solely to John Hancock's alleged interference with MRM's performance of two
financing agreements and an anticipated stock offering. The requested
documentation is irrelevant to the claims asserted by MRM, and any conceivable
relevance is outweighed by the burden of production. Manulife objects on the
grounds that this request is beyond the requirements imposed on a non-party
responding to a subpoena under Fed. R. Civ. P. 45, which does not require a
responding party to generate documents to respond to a request. Manulife further
objects on the grounds that the request appears to be an effort to propound
interrogatories as to the identities of persons involved in Manulife's pre-merger due

diligence review, and thus an effort to contravene the limitations on non-party

discovery under the rules. Manulife will comply with its obligations under the rules.

Manulife further objects to the extent the request seeks information which is subject

to the attorney client privilege and/or work product doctrine, or which is subject to

confidentiality and/or non-disclosure agreements. Notwithstanding these specific

objections as to relevance, overbreadth and burden, but subject to its general

objections no.s 5 and 6, Manulife is unaware of any responsive non-privileged

documents at the present time.

Respectfully submitted:


MANULIFE FINANCIAL CORPORATION

By its Attorneys:

Mitchell S. King [Mass. BBO #272810]
Joseph S. Sano [Mass. BBO #545700]
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8100

And

Kevin J. Cloherty [Mass. BBO #554472]
Testa, Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
(617) 248-7000


Dated: January 3, 2005

I hereby certify that on this third day of January, 2005, I served a copy of the foregoing: Objections to MRM's Subpoena to Manulife Financial Corporation via e-mail and First Class Mail, postage prepaid, upon all counsel of record.

Joseph S. Sano